# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAZEN ABDALLAH ALIAHMAD,<br>    **Petitioner,**<br><br>  v.<br><br>GERALD MORRIS, Warden,<br>    **Respondent.** | NO. CV 18-8499-AG (KS)<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus, all the records herein, and the Report and Recommendation of United States Magistrate Judge ("Report"). Further, the Court has engaged in a *de novo* review of those portions of the Report to which Petitioner has raised objections ("Objections"). Some of Petitioner's objections are addressed briefly below. The Objections are overruled.

*///*

*///*

*///*

*///*

*///*

1

### A. Objection Regarding Exhaustion.

As stated in the Report, Petitioner's claim of cumulative error in Ground Three is unexhausted because his Petition for Rehearing in the California Court of Appeal failed to call attention to the Court of Appeal's earlier omission of the claim in its reasoned decision on direct review. (Report at 9.) Plaintiff objects that the Court relied on federal authorities that "do not stand for that proposition." (Objections at 1.) To the contrary, the authorities are citable for the proposition that Petitioner's failure to comply with well-established California rules governing his Petition for Review rendered his claim unexhausted. (Report at 9.) But even assuming for purposes of argument that Petitioner is correct on the exhaustion question, it would make no difference. The Report's determination that Petitioner was not entitled to relief for his cumulative error claim under a relatively lenient standard for unexhausted claims (Report at 42) means that he would not prevail even if he were correct that his claim is exhausted and thereby subject to the stringent standard of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See generally Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding that federal courts can "deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies").

### B. Objections Regarding the Confrontation Clause Claim.

P.H., the victim and primary prosecution witness, was found to be unavailable for Petitioner's retrial, and as a result, her prior testimony was read aloud to the jury at the retrial. (Report at 11.) Petitioner raises several objections to the Report's conclusion that the California Court of Appeal's decision was not objectively unreasonable in its finding that the prosecutor had undertaken good faith efforts to locate P.H. for the retrial.

Petitioner objects that the prosecutor never served a legally valid subpoena on P.H. (Objections at 2.) As stated in the Report, however, a prosecutor is not required to serve a

subpoena on a witness or follow any prescribed procedures as a prerequisite to showing good faith. (Report at 20.) "'Good faith' and 'reasonableness' are terms that demand fact-intensive, case-by-case analysis, not rigid rules." *Christian v. Rhode*, 41 F.3d 461, 467 (9th Cir. 1994); *see also Acosta-Huerta v. Estelle*, 7 F.3d 139, 143 (9th Cir. 1992) ("The prosecution was not required to subpoena [the witness] before she left the state."). As discussed in the Report, it was not objectively unreasonable for the California Court of Appeal to conclude that the prosecutor had taken reasonable measures to secure P.H.'s presence for Petitioner's retrial, specifically through numerous contacts with P.H. and P.H.'s mother during the four-year period between the two trials. (Report at 24.)

Petitioner also objects that the Report unreasonably failed to recognize that the prosecutor was aware of P.H.'s plans to travel to Europe yet did nothing. (Objections at 2, 5.) But regardless of what the prosecutor knew of P.H.'s plans, he had no authority to prevent her from leaving the country. (Report at 23.) The prosecutor also had no authority to compel her to return to the United States for the retrial. *See Mancusi v. Stubbs*, 408 U.S. 204, 212-13 (1972) (holding that where the state was powerless to compel the appearance of a witness living overseas, "a federal habeas court was not warranted in upsetting the determination of the state trial court as to [the witness's] unavailability"); *Christian*, 41 F.3d at 467 ("Here, the prosecution asked the witnesses if they would come to the United States to testify at trial; they refused. The state did not have the power to compel them to do so.").

Petitioner also objects that the California Court of Appeal's decision was "contrary" to clearly established federal law because it ignored the directives of *Barber v. Page*, 390 U.S. 719 (1968). (Objections at 3.) As discussed in the Report, Petitioner did not carry his burden of showing that the California Court of Appeal had applied a legal rule that contradicts the governing law set forth in the Supreme Court's precedents. (Report at 19.) Petitioner now argues that the California Court of Appeal ignored language in *Barber*, which Petitioner interprets to hold that prosecutors must avail themselves of alternative means of securing a

witness, and whether such means "would ultimately be successful *does not matter*," because "the possibility of refusal is not the equivalent of asking and receiving a rebuff." (Objections at 3) (emphasis added). Petitioner interprets clearly established federal law too expansively. It is clearly established federal law that the likelihood of success of any means to produce a witness does matter, in assessing the reasonableness of the prosecutor's efforts. *See Hardy v. Cross*, 565 U.S. 65, 70 (2011) (*per curiam*) ("But 'the great improbability that such efforts would have resulted in locating the witness, and would have led to her production at trial, neutralizes any intimation that a concept of reasonableness required their execution.'") (quoting *Ohio v. Roberts*, 448 U.S. 56, 76 (1980)). Thus, the California Court of Appeal's application of a legal standard that accounted in part for the improbability that Petitioner's suggested measures would have led to P.H.'s production at the retrial was not contrary to clearly established federal law.

Petitioner also objects that the Report did not address Petitioner's argument that the California Court of Appeal's decision omitted several critical facts about P.H.'s absence and therefore was based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). (Objections at 3-4.) But Petitioner did not raise any identifiable argument under § 2254(d)(2) in his Petition. He only asserted in a conclusory fashion that the California Court of Appeal's decision was based on "an unreasonable determination of fact, as set forth in the above discussion." (Petition Memorandum ("Petition Mem.") at 13.) Yet the "above discussion" gave the Court no indication as to why Petitioner was alleging an unreasonable determination of the facts. (Petition Mem. at 8-13.) Thus, because this argument is effectively being raised for the first time in the Objections to the Report, the Court has no duty to consider it. *See United States v. Howell*, 231 F.3d 615, 623 (9th Cir. 2000) (recognizing that a district court may decline to consider factual allegations raised for the first time in objections to a magistrate judge's report and recommendation where the specific allegations were available before the magistrate's proceedings ever began).

4

Petitioner also objects to the Report's findings about the involvement of P.H.'s mother, asserting that "the Report does not cite any actual *promise* by P.H.'s mother that P.H. would appear." (Objections at 6 (emphasis in original).) To the contrary, the Report cited the California Court of Appeal's finding, which the parties do not dispute, that P.H.'s mother assured the prosecutor in late 2016 (before the retrial in November 2016) that she would make sure P.H. returned to the United States for the retrial. (Report at 25 (citing Lodg. No. 8 at 6).)

**C.  Objections Regarding the Closing Argument Claim.**

During closing arguments, the prosecutor made various remarks that Petitioner claims violated his constitutional rights. (Report at 26.) The prosecutor's remarks involved, among other things, expert testimony about sexual abuse, P.H.'s financial motives, and the social ramifications of the verdict for future victims. (*Id.* at 38-40.)

Petitioner objects to the Report's finding that his claim involving the expert's testimony is subject to review under the AEDPA, based on the Court's determination that the California Court of Appeal had rejected the claim on the merits. (Objections at 7.) Petitioner points out that Respondent "conceded that AEDPA review does *not* apply to this claim." (*Id.* (emphasis in original).) But the Court must independently determine the correct standard of review, regardless of the government's waiver. *See Amado v. Gonzalez*, 758 F.3d 1119, 1133 n.9 (9th Cir. 2014) ("[W]e have the obligation to apply the correct standard, for the issue is non-waivable.") (citing, *inter alia*, *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("We agree with our sibling circuits that the correct standard of review under AEDPA is not waivable.")). It remains the case that the California Court of Appeal adjudicated this claim on the merits, subjecting the claim to review under the AEDPA. (Report at 30-31.)

Petitioner also objects that the California Court of Appeal unreasonably found no violation of Petitioner's due process rights when he was prohibited from arguing to the jury

that P.H. had a financial motive to falsely accuse Petitioner. (Objections at 8.) The trial court had disallowed the argument because there was no evidence P.H. had a financial motive. (Report at 32-33.) Petitioner argues that there was such evidence because, according to the prosecutor's own closing argument, P.H. had financially benefited from her association with Petitioner: P.H asked Petitioner to buy her things and was "living in the lap luxury" in Petitioner's Calabasas mansion. (Objections at 8; Report at 33.) But this financial history gave Petitioner no reasonable basis to argue that P.H. had a financial motive to falsely accuse Petitioner. As the prosecutor pointed out, any financial benefits that P.H. had enjoyed would inevitably stop as soon as P.H. accused Petitioner of the crimes. (Report at 33.) And as the Report noted, the record contained no evidence that P.H. knew of any way, post-accusation, to benefit financially from the case. (*Id.* at 36.) Thus, it was not objectively unreasonable for the California Court of Appeal to conclude that the trial court's restriction on Petitioner's closing argument in this regard did not violate his constitutional rights.

Petitioner also objects to the Report's rejection of Petitioner's characterization of the prosecutor's remarks. (Objections at 8.) As stated in the Report, the prosecutor never argued that P.H. "would not" receive any money, and thus the prosecutor did not say something she knew to be false merely because she later obtained an award of $100,000 in non-economic damages for P.H. (Report at 36.) The record showed that the prosecutor argued instead that the victim "didn't" and "hasn't" received money. (*Id.*) Relying on legal authorities involving statutory construction, Petitioner contends that such "words used in the present tense include the future as well as the present." (Objections at 8.) To the contrary, the jury would not have been expected to apply rules of statutory construction while listening to the prosecutor's closing argument. *See United States v. Williams*, 836 F.3d 1, 14 (D.C. Cir. 2016) ("But '[n]either courts nor juries parse extemporaneous remarks in closing argument as closely as sentences in carefully drafted legal documents,' and what matters is what the jury would 'have understood the prosecutor to say.'") (quoting *United States v. Venable*, 269 F.3d 1086, 1090

(D.C. Cir. 2001)). The jury would have understood the prosecutor to say that P.H. had not received money, rather than she would not ever receive money.

Petitioner also objects to the Report's rejection of his claim that the prosecutor urged the jury to consider the social ramifications of its verdict for future victims. (Objections at 9.) The prosecutor argued, "If a child ever had any doubts about bringing allegations of sexual abuse, that [defense] closing argument tells you you might as well just keep your mouth shut." (*Id*. (citing 11 RT 2073).) As stated in the Report, the comment was not a gratuitous remark without any logical connection to the evidence, but rather part of a broader argument that had some logical connection to the jury's assessment of P.H.'s testimony. (Report at 41.) Petitioner concedes that the remark was not "unconnected to the evidence" but nonetheless argues it was still an improper appeal to community values. (Objections at 9.) But the fact that the remark had some connection to the evidence, rather than reflecting a gratuitous social statement, was critical. *See United States v. Sanchez.* 659 F.3d 1252, 1258-59 (9th Cir. 2011) (recognizing cases in which a prosecutor's remarks about moral values were not prejudicial because they involved reasonable inferences from the evidence or were logically connected to witness testimony). And given that the remark was a minor point during a lengthy argument, Petitioner has not demonstrated that the remark violated his right to due process.

Finally, Petitioner filed a "Supplemental Authority" on October 24, 2019 citing *United States v. Burden*, 934 F.3d 675, 685-89 (D.C. Cir. 2019). The Court is not persuaded by this decision issued by the D.C. Circuit on August 20, 2019, and not involving the victim of a sexual crime.

**ORDER**

IT IS ORDERED that: (1) the Petition is denied; and (2) Judgment shall be entered dismissing this action with prejudice.

DATED: November 12, 2019

_____
ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE